Laurence M. Rosen, Esq. (SBN 219683)
**THE ROSEN LAW FIRM, P.A.**
355 S. Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

Counsel for Plaintiff Cianci

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JORDAN CIANCI, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, | CASE No.: |
| | CLASS ACTION |
| Plaintiff, | **CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS** |
| v. | |
| BLUE EARTH, INC., JOHNNY R. THOMAS, JOHN FRANCIS, AND BRETT WOODARD, | JURY TRIAL DEMANDED |
| Defendants. | |

Class Action Complaint for Violation of the Federal Securities Laws

Plaintiff Jordan Cianci, individually and on behalf of all other persons similarly situated, by his undersigned attorneys, alleges in this Complaint the following upon knowledge with respect to his own acts, and upon facts obtained through an investigation conducted by his counsel, which included, inter alia: (a) review and analysis of relevant filings made by Blue Earth, Inc. ("Blue Earth" or the "Company") with the United States Securities and Exchange Commission (the "SEC"); (b) review and analysis of Defendants' public documents, conference calls and press releases; (c) review and analysis of securities analysts' reports and advisories concerning the Company; and (d) information readily obtainable on the Internet.

Plaintiff believes that further substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery. Most of the facts supporting the allegations contained herein are known only to Defendants or are exclusively within their control.

## NATURE OF THE ACTION

1.     This is a federal securities class action on behalf of all persons and entities, other than Defendants, who purchased the common stock of Blue Earth during the period from October 7, 2013 through October 21, 2014, inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of federal securities laws (the "Class").

2.     Blue Earth and its subsidiaries provide energy efficiency and alternative/renewable energy solutions for small and medium sized commercial and industrial facilities.

3.     One of Blue Earth's energy solutions is the Battery Backup System ("BBS"), which was designed to power signalized traffic intersections during loss of utility power. Its UltraPower Stealth Battery Backup System ("UPStealth") can be

1

formed into various configurations to allow it to bend around corners and fit into spaces that cannot be accessed by traditional backup systems.

4.     On October 21, 2014, *SeekingAlpha.com* published an article asserting that UPStealth is unviable and likely worthless.

5.     On this news, the Company's stock fell $1.29 per share, or 50%, on extraordinary volume from its previous closing price to close at $1.29 per share on October 21, 2014.

## JURISDICTION AND VENUE

6.     The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. § 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5).

7.     This Court has jurisdiction over the subject matter of this action pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331.

8.     Venue is proper in this Judicial District pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b) as the alleged misleading public filings and press releases entered this district.

9.     In connection with the acts, conduct and other wrongs alleged herein, defendants either directly or indirectly used the means and instrumentalities of interstate commerce, including but not limited to the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

10.     Plaintiff Jordan Cianci purchased Blue Earth common stock during the Class Period and has suffered damages as set forth in the accompanying certification.

11.     Blue Earth is a Nevada corporation headquartered in Henderson, Nevada.

Class Action Complaint for Violation of the Federal Securities Laws

12. During the Class Period, Blue Earth's common stock was actively traded on OTCQB until it was uplisted to NASDAQ on August 29, 2014 under the ticker symbol "BBLU."

13. Defendant Johnny R. Thomas ("Thomas"), at all relevant times herein, was the Company's Chief Executive Officer and President.

14. Defendant John Francis ("Francis"), at all relevant times herein, was the Company's Vice President-Corporate Development and Investor Relations.

15. Defendant Brett Woodard ("Woodard"), at all relevant times herein, was the Company's Chief Financial Officer.

16. Thomas, Francis and Woodard are collectively referred to hereinafter as the "Individual Defendants."

17. Each of the Individual Defendants:

(a) directly participated in the management of the Company;

(b) was directly involved in the day-to-day operations of the Company at the highest levels;

(c) was privy to confidential proprietary information concerning the Company and its business and operations;

(d) was involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

(e) was aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and

(f) approved or ratified these statements in violation of the federal securities laws.

18. As officers, directors, and controlling persons of a publicly-held company whose common stock is and was registered with the SEC pursuant to the Exchange Act, and was traded on the OTCQB and NASDAQ and governed by the

3

provisions of the federal securities laws, the Individual Defendants each had a duty to disseminate accurate and truthful information promptly with respect to the Company's financial condition and to correct any previously-issued statements that had become materially misleading or untrue to allow the market price of the Company's publicly-traded stock to reflect truthful and accurate information.

19.     Blue Earth is liable for the acts of the Individual Defendants and its employees under the doctrine of respondeat superior and common law principles of agency as all of the wrongful acts complained of herein were carried out within the scope of their employment with authorization.

20.     The scienter of the Individual Defendants and other employees and agents of the Company is similarly imputed to Blue Earth under respondeat superior and agency principles.

## SUBSTANTIVE ALLEGATIONS

21.     The Class Period begins on October 7, 2013, when the Company filed a Form 8-K with the SEC that contained a slide presentation, which included the following slide about the market for its BBS:

Class Action Complaint for Violation of the Federal Securities Laws



## Energy Power Solutions: Markets

- Traffic intersections: 400,000, $6,000/intersection = $2.4B
- Railroad Crossings: 200,000 = $1.2 B
- Market verticals: Oxygen units, wheelchairs, etc.
- Energy efficiency: Decreases peak power useage for most BBLU customers, data rooms, medical device power supply, and many others

BlueEarth

*Save Energy    Save Money    Save The Planet*

22.   On June 16, 2014, the Company issued a press release announcing the commencement of the fulfillment of backlog orders for UPStealth and touting its market potential, stating in relevant part:

> The Company is also pleased to announce that shipment of UPStealth™ units, with improved functionality, has commenced. Backlog orders of over $400,000, exceed first quarter sales by several hundred thousand dollars. The UPStealth™ backlog is expected to be fulfilled, during the last three weeks of this quarter and the first month of the third quarter.
>
> *****
>
> Functionality of our proprietary UPStealth™ intelligent digital battery backup product has been improved, in the second quarter, by increasing the energy efficiency of the battery technology, which provides the end consumer enhanced run-time and performance. Further advanced technology will rollout, this month, through the launch of a new Graphical User Interface ("GUI") for the UPStealth™.

5

Class Action Complaint for Violation of the Federal Securities Laws

The GUI, designed and manufactured by the Blue Earth engineering team, provides consumers unprecedented bi-directional control and Real-Time Intelligence ("RTi") of the UPStealth™ when deployed at any given signalized intersection with Ethernet connectivity. The GUI will provide City Agencies the opportunity to dispatch resources more cost effectively and efficiently during a loss of utility power. In addition, the GUI and RTi will provide City Agencies advanced notice of a potential equipment failure based on the change in energy consumption at a given signalized intersection via text messaging and user configurable alarms.

 "The Blue Earth team is excited about the continued momentum in product acceptance and approval by City and State Agencies, along with the customer enthusiasm for the GUI rollout." said Tim Hysell, CEO of Blue Earth Energy Power Solutions, a wholly owned subsidiary of Blue Earth, Inc.

The UPStealth™ was created for signalized intersections when loss of utility power occurs. UPStealth™ can be formed in various configurations that allow the intelligent battery to bend around corners and fit into spaces that cannot be accessed by traditional battery backup systems. Compared to lead-acid batteries, that the UPStealth™ replaces, cost of ownership is less, requires less maintenance, lasts several years longer and Blue Earth EPS offers a finance program, which allows States and municipalities to replace lead-acid battery systems without capital expenditures.

***According to industry sources, there are an estimated 313,000 signalized traffic intersections in the US and the market potential is approximately $453 million that does not include other substantial potential vertical markets in traffic, such as, rail road crossings, freeway ramp monitoring, school zone flashers and vehicle messaging signs and other intelligent transportation applications.*** UPStealth™ is marketed by nine established distributors with a passion for what it offers the end consumers and who understand the deficiencies and performance challenges of lead-acid battery back up systems.

(emphasis added)

Class Action Complaint for Violation of the Federal Securities Laws

23. On September 11, 2014, the Company filed a Form 8-K with the SEC that contained a slide presentation to be given during meetings with certain investors that same day, which included the following slides touting the market potential of UPStealth:

## BlueEarth

### Markets within the Traffic Sector

▸Signalized Intersections approximately 313,000 in US



▸Freeway Ramp Metering



▸Railroad Crossings



▸Vehicle Messaging Signs



▸School Zone Flashers



Class Action Complaint for Violation of the Federal Securities Laws

# UPStealth's Traffic Market Potential

### United States & Canada total potential
## $504,829,100
(does not include other potential vertical markets in Traffic)

▸ US Market potential: **$453,850,000**

▸ Canada Market potential:  **$50,979,100**
- Population of 35,158,300 is 35,158 signalized intersections X 25%= 8,789 intersections that need BBS x $5,800= $50,979,100

24.    These statements above were materially false and misleading when made because Defendants knew that the market potential of UPStealth is unviable.

### THE TRUTH EMERGES

25.    On October 21, 20114, *SeekingAlpha.com* published an article concerning Blue Earth that questioned, among other things, the viability of UPStealth.

26.    The article states in relevant parts:

***The "story" being fed to investors now is that there is a $500 million (WOW!) in the traffic $2.4 billion (!) battery backup market for BBLU. I think both of these points seem obviously mistaken, confused and the battery "opportunity" for BBLU is so obviously unviable*** I question why BBLU management is even wasting their time and shareholder money on this.

8

Let me explain:

***First***, I believe the size of the market "opportunity" BBLU presents appears misleading to me and is not even close to accurate. BBLU seems to quote different numbers in different presentations too. In the slide below, BBLU states there are 400k traffic intersections in the US for their market and their opportunity is $6k per intersection.

(*click to enlarge*)



**Energy Power Solutions: Markets**

- Traffic intersections: 400,000, $6,000/intersection = $2.4B
- Railroad Crossings: 200,000 = $1.2 B
- Market verticals: Oxygen units, wheelchairs, etc.
- Energy efficiency: Decreases peak power useage for most BBLU customers, data rooms, medical device power supply, and many others

**BlueEarth**

**Save Energy   Save Money   Save The Planet**

(picture credit Blue Earth)

However, in this presentation, BBLU seems to "shift" that number and is claiming there are 313k intersections in their addressable market? Even if you add the Canadian intersection estimates I believe you still don't get even close to 400k intersections quoted above so not sure what is going on here?

Class Action Complaint for Violation of the Federal Securities Laws

1
2
3
4
5
6
7
8
9
10
11
12



BlueEarth

**Markets within**

▶Signalized Intersections
approximately 313,000 in US

(picutre credit Blue earth) [sic]

*The $500 million+ market potential number BBLU throws around here is without credibility and misleading as well. It's not exactly clear where BBLU gets that $504 million number from, but best I can tell it seems to have been fabricated using the 313k intersection number from BBLU's slide above multiplied by a price point of $1,450 for the batteries. I'd like to state that if BBLU's traffic signal batteries indeed have a $1,450 price point they are in serious trouble as this document from 2009 states their signals had $832 battery cost per signal and that is using retail price to end user and not wholesale price that BBLU would be expected to receive. This document states the batteries are only $185 each, and if you search around you can find them even cheaper.*

*(click to enlarge)*

13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Class Action Complaint for Violation of the Federal Securities Laws

## UPStealth's Traffic Market Potential

### United States & Canada total potential
### $504,829,100
(does not include other potential vertical markets in Traffic)

▶ US Market potential: $453,850,000

▶ Canada Market potential:  $50,979,100
  ● Population of 35,158,300 is 35,158 signalized intersections X 25%=
     8,789 intersections that need BBS x $5,800= $50,979,100

(picture credit Blue Earth)

*Furthermore, the battery content of a traffic intersection is only a tiny component of the $5-6k it costs to install a battery backup system anyway.* In that context, how does that "Canada Market Potential" Section make sense? Does BBLU even have a current construction presence in Canada anyway?

This is absurd though for multiple reasons. *First of all, no city or area is going to battery backup every signal because these are not free and a cost-benefit analysis must be done.* We can see this from countless city generated analysis like this, or this. This takes 1 minute with Google to prove for yourself so I question why BBLU management presents it this way.

*Further impairing this market analysis, per this CA state report battery backup systems seem to only be possible when used on signals that have been upgraded to LED lights. While this is increasing in*

11

Class Action Complaint for Violation of the Federal Securities Laws

*prevalence, not every single traffic intersection in the US has LED lights or ever will have.*

*Also, battery backing up traffic signals in the US has been going on for decades. Any signal already done has a battery cabinet, making some battery alternative that is more expensive than current lead acid batteries but replaces the cabinet simply not useful. As far back as 2012, Baltimore had already done 10% of its intersections and was working on more.* Remember, backing up every single intersection is never going to happen, so if 10% of the total has been done, I estimate this is more like 30-40% of the total addressable signals. Even more obvious, why would any city design their battery backup systems so they could only use one company's batteries? They could then be hostage to that company for price increases and hassle. I think it's obvious this doesn't make sense.

*The currently offered batteries work just fine anyway and are extremely cheap. For cash strapped municipalities, saving money is always crucial. Per this document, they last 7-8 years and only cost $185 each. I don't see how PowerGenix could ever compete with this price point and I would imagine lead/acid batteries have come down in price further since 2009.* Also, the batteries are typically required by the municipality to have tool free maintenance so the current battery options are not difficult to work with apparently. Plus, the company that did the install and the manufacturer will get battery replacement sales in my view anyway as they already have the relationship and the trust with the people involved. Furthermore, any new vendor would typically have to go through a process or their product put out to
competitive bid again.

*Not ever* [sic] *traffic signal backup will even be done with batteries anyway. This NYC report shows they are exploring solar backup, fuel cell, generator and other options. To ever think that batteries will get 100% of this market seems absurd.*

*Third, these systems come with warranties and the batteries last a long time.* See this on page TP-13 to see the batteries have 5-year unconditional warranties with full replacement. So if there is a battery issue it is not the municipalities' issue. It is the installer or manufacturer that has to fix that. *I would have to imagine that installing some battery with unclear long-term reliability could void a battery backup*

12

Class Action Complaint for Violation of the Federal Securities Laws

*signal equipment warranty as well. If this is true, why would any municipality take this risk?*

*Fourth, and most importantly, the last company to partner with PowerGenix now appears to have moved back to Lead Acid batteries. This is the company PowerGenix partnered with previously in the traffic intersection space.* Here is the data sheet on this company's currently listed product. As you can see under "Electrical", this system now uses a "sealed AGM" 65 amp batter setup. AGM batteries are lead acid. Here is the data sheet from the other currently listed traffic signal battery backup system offered by this company as well. As you can see on the second page on the upper left, AGM batteries are also listed as what is offered.

*Furthermore, in the information sheet we can see "these batteries can be supplied to be installed within the traffic cabinets or in a separate battery pack enclosure." So there are already traffic signal battery backup systems that include the batteries in the cabinet.*

(emphasis added)

27.    The *SeekingAlpha.com* article also revealed, among other things, the following:

(a)    Defendants Thomas and Francis previously presided over disasters at many companies, including the publicly traded AgriBioTech, which resulted in fraud allegations and bankruptcy;

(b)    Blue Earth has hired multiple questionable stock promoters, including the infamous John Liviakis – founder and Chairman of Liviakis Financial Communications, Inc., the Californian investor relations firm for Blue Earth – who was involved in countless stock market wipeouts, including Cascade International, Airship International Ltd., and Holmes Microsystems, and recently sold his Blue Earth stock; and

(c)    multiple accounting red flags, including Blue Earth's previous auditor having its license revoked and barred, while its current auditor has multiple PCAOB deficiencies, including "failure to perform sufficient audit procedures."

13

Class Action Complaint for Violation of the Federal Securities Laws

28.     Following this negative news, the Company's stock fell $1.29 per share, or 50%, on extraordinary volume from its previous closing price to close at $1.29 per share on October 21, 2014.

### APPLICABILITY OF PRESUMPTION OF RELIANCE:
### FRAUD ON THE MARKET DOCTRINE

29.     At all relevant times, the market for Blue Earth's common stock was an efficient market for the following reasons:

(a)     Blue Earth's stock met the requirements for listing, and was listed and actively traded on the OTCQB and NASDAQ, both highly efficient and automated national market;

(b)     During the Class Period, on average, hundreds of thousands of shares of Blue Earth stock were traded on a weekly basis, demonstrating a very active and broad market for Blue Earth stock and permitting very strong presumption of an efficient market;

(c)     As a regulated issuer, Blue Earth filed with the SEC periodic reports during the Class Period;

(d)     Blue Earth regularly communicated with public investors via established market communication mechanisms, including regular disseminations of press releases on the national circuits of major newswire services and other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services;

(e)     Blue Earth was followed by at least one securities analysts employed who wrote reports that were publicly available and entered the public marketplace;

(f)     Numerous FINRA member firms were active market-makers in Blue Earth stock at all times during the Class Period; and

(g)     Unexpected material news about Blue Earth was rapidly reflected in and incorporated into the Company's stock price during the Class Period.

30.     As a result of the foregoing, the market for Blue Earth's common stock promptly digested current information regarding Blue Earth from all publicly available sources and reflected such information in Blue Earth's stock price.  Under these circumstances, all purchasers of Blue Earth's common stock during the Class Period suffered similar injury through their purchase of Blue Earth's common stock at artificially inflated prices, and a presumption of reliance applies.

## AFFILIATED UTE

31.     Neither Plaintiff nor the Class need prove reliance – either individually or as a class because under the circumstances of this case, positive proof of reliance is not a prerequisite to recovery, pursuant to ruling of the United States Supreme Court in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972).  All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered the omitted information important in deciding whether to buy or sell the subject security.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

32.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all persons who purchased the common stock of Blue Earth during the Class Period and who were damaged thereby.  Excluded from the Class are Defendants, the current and former officers and directors of the Company, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

33.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Blue Earth's common stock was actively

traded on the OTCQB and NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds of members in the proposed Class. Members of the Class may be identified from records maintained by Blue Earth or its transfer agent and may be notified of the pendency of this action by mail, using a form of notice customarily used in securities class actions.

34.   Plaintiff's claims are typical of the claims of the members of the Class, as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

35.   Plaintiff will fairly and adequately protect the interests of the members of the Class and have retained counsel competent and experienced in class and securities litigation.

36.   Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a)   whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b)   whether the misstatements and omissions alleged herein were made with scienter;

(c)   whether statements made by the Individual Defendants to the investing   public during the Class Period misrepresented and/or omitted material facts about the business, prospects, and operations of Blue Earth; and

(d)   to what extent the members of the Class have sustained damages and the proper measure of damages.

37.   A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members

Class Action Complaint for Violation of the Federal Securities Laws

may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to redress individually the wrongs done to them. There will be no difficulty in the management of this action as a class action.

### ECONOMIC LOSS/LOSS CAUSATION

38.     The market for Blue Earth's common stock was open, well-developed and efficient at all relevant times. As a result of these materially false and misleading statements and failures to disclose, Blue Earth's securities traded at artificially inflated prices during the Class Period. Plaintiffs and other members of the Class purchased or otherwise acquired Blue Earth's common stock relying upon the integrity of the market price of Blue Earth's securities and market information relating to Blue Earth, and have been damaged thereby.

39.     During the Class Period, Defendants materially misled the investing public, thereby inflating the price of Blue Earth's common stock, by publicly issuing false and misleading statements and omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and misleading. Said statements and omissions were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about the Company, its business and operations, as alleged herein.

40.     At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiffs and other members of the Class. As described herein, during the Class Period, Defendants made or caused to be made a series of materially false or misleading statements about Blue Earth's business, prospects and operations. These material misstatements and omissions had the cause and effect of creating in the market an unrealistically positive assessment of Blue Earth and its business, prospects and operations, thus causing the Company's

common stock to be overvalued and artificially inflated at all relevant times. Defendants' materially false and misleading statements during the Class Period resulted in Plaintiffs and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein.

**FIRST CLAIM**
**Violation of Section 10(b) of**
**The Exchange Act Against and Rule 10b-5**
**<u>Promulgated Thereunder Against All Defendants</u>**

41.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

42.    This First Claim is asserted against all Defendants.

43.    During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to, and throughout the Class Period, did: (1) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (2) cause Plaintiff and other members of the Class to purchase and/or sell Blue Earth common stock at artificially inflated and distorted prices.  In furtherance of this unlawful scheme, plan and course of conduct, Defendants, individually and as a group, took the actions set forth herein.

44.    Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the business, operations and future prospects of Blue Earth as specified herein.

45.    Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct  as alleged herein in an effort to assure investors of Blue

18

Class Action Complaint for Violation of the Federal Securities Laws

1    Earth's value and performance and continued substantial growth, which included the

2    making of, or the participation in the making of, untrue statements of material facts

3    and omitting to state material facts necessary in order to make the statements made

4    about Blue Earth and its business operations and future prospects in light of the

5    circumstances under which they were made, not misleading, as set forth more

6    particularly herein, and engaged in transactions, practices and a course of business

7    that operated as a fraud and deceit upon the purchasers of Blue Earth's common stock

8    during the Class Period.

9        46.    Each of the Individual Defendants' primary liability, and controlling

10   person liability, arises from the following facts: (1)  Individual Defendants were high-

11   level executives,  directors, and/or agents at the Company during the Class Period and

12   members of the Company's management team or had control thereof; (2) each of the

13   Individual Defendants, by virtue of his responsibilities and activities as a senior

14   officer and/or director of the Company, was privy to and participated in the creation,

15   development and reporting of the Company's financial condition; (3) each of the

16   Individual Defendants enjoyed significant personal contact and familiarity with the

17   other defendants and was advised of and had access to other members of the

18   Company's management team, internal reports, and other data and information about

19   the Company's finances, operations, and sales at all relevant times; (4) each of the

20   Individual Defendants was aware of the Company's dissemination  of information to

21   the investing public that they knew or recklessly disregarded was materially false and

22   misleading; and (5) each of the Individual Defendants culpably participated in the

23   wrongful conduct alleged herein.

24       47.    Defendants had actual knowledge of the misrepresentations and

25   omissions of material facts set forth herein, or acted with reckless disregard for the

26   truth in that they failed to ascertain and to disclose such facts, even though such facts

27   were available to them. Such defendants' material misrepresentations and/or

28

Class Action Complaint for Violation of the Federal Securities Laws

omissions were done knowingly or recklessly and for the purpose and effect of concealing Blue Earth's financial condition and future business prospects from the investing public and supporting the artificially inflated or distorted price of its common stock. As demonstrated by Defendants' overstatements and misstatements of the Company's financial condition and business prospects throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

48. As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market price for Blue Earth's common stock was artificially inflated during the Class Period. In ignorance of the fact that market prices of Blue Earth's publicly-traded common stock were artificially inflated or distorted, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the Company's common stock trade, and/or on the absence of material adverse information that was known to or recklessly disregarded by defendants but not disclosed in public statements by defendants during the Class Period, Plaintiff and the other members of the Class acquired and/or sold Blue Earth common stock during the Class Period at artificially high prices and were damaged thereby.

49. At the time of said misrepresentations and omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true. Had Plaintiff and the other members of the Class and the marketplace known the truth regarding Blue Earth's financial results, which were not disclosed by defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired Blue Earth common stock, or, if they had acquired such common stock

Class Action Complaint for Violation of the Federal Securities Laws

during the Class Period, they would not have done so at the artificially inflated prices or distorted prices at which they did.

50.    By virtue of the foregoing, the Defendants have violated Section 10(b) of the Exchange Act, and Rule 10b-5 promulgated thereunder.

51.    As a direct and proximate result of the Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's common stock during the Class Period.

52.    This action was filed within two years of discovery of the fraud and within five years of Plaintiff's purchases of securities giving rise to the cause of action.

## SECOND CLAIM
### Violation Of Section 20(a) of
### The Exchange Act Against the Individual Defendants

53.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

54.    This Second Claim is asserted against each of the Individual Defendants.

55.    The Individual Defendants acted as controlling persons of Blue Earth within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their high-level positions, agency, and their ownership and contractual rights, participation in and/or awareness of the Company's operations and/or intimate knowledge of aspects of the Company's revenues and earnings and dissemination of information to the investing public, the Individual Defendants had the power to influence and control, and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements that Plaintiff contend are false and misleading.  The Individual Defendants were provided with or had unlimited access to copies of the Company's

reports, press releases, public filings and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued, and had the ability to prevent the issuance of the statements or to cause the statements to be corrected.

56.   In particular, each of these defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

57.   As set forth above, Blue Earth violated Section 10(b) and Rule 10b-5. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act as they culpably participated in the fraud alleged herein.   As a direct and proximate result of defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's common stock during the Class Period.

58.   This action was filed within two years of discovery of the fraud and within five years of Plaintiff's purchases of securities giving rise to the cause of action.

**WHEREFORE**, Plaintiff prays for relief and judgment, as follows:

(a)   Determining that this action is a proper class action, designating Plaintiff class representative under Rule 23 of the Federal Rules of Civil Procedure and Plaintiff's counsel as Class Counsel;

(b)   Awarding compensatory damages in favor of Plaintiff and the other Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)   Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)     Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: October 24, 2014                Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**

/s/ Laurence Rosen
Laurence M. Rosen, Esq. (SBN 219683)
355 S. Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

Counsel for Plaintiff Cianci

23

# Certification and Authorization of Named Plaintiff Pursuant to Federal Securities Laws

The individual or institution listed below (the "Plaintiff") authorizes and, upon execution of the accompanying retainer agreement by The Rosen Law Firm P.A., retains The Rosen Law Firm P.A. to file an action under the federal securities laws to recover damages and to seek other relief against Blue Earth Inc.. The Rosen Law Firm P.A. will prosecute the action on a contingent fee basis and will advance all costs and expenses. The Blue Earth Inc.. Retention Agreement provided to the Plaintiff is incorporated by reference, upon execution by The Rosen Law Firm P.A.

| | |
|---|---|
| **First name:** | Jordan |
| **Middle initial:** | |
| **Last name:** | Cianci |
| **Address:** | |
| **City:** | |
| **State:** | |
| **Zip:** | |
| **Country:** | |
| **Facsimile:** | |
| **Phone:** | |
| **Email:** | |



Plaintiff certifies that:

1. Plaintiff has reviewed the complaint and authorized its filing.
2. Plaintiff did not acquire the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in this private action or any other litigation under the federal securities laws.
3. Plaintiff is willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial, if necessary.
4. Plaintiff represents and warrants that he/she/it is fully authorized to enter into and execute this certification.
5. Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.
6. Plaintiff has made no transaction(s) during the Class Period in the debt or equity securities that are the subject of this action except those set forth below:

Acquisitions:

| Type of Security | Buy Date | # of Shares | Price per Share |
|---|---|---|---|
| Common Stock | Sep 23 2014 | 256 | 3.40 |
| Common StockBuy Date | # of Shares | Price per Share | |

Sales:

| Type of Security | Sale Date | # of Shares | Price per Share |
|---|---|---|---|
| Common StockSell Date | # of Shares | Price per Share | |

**Certification for Jordan Cianci (cont.)**

7.  I have not served as a representative party on behalf of a class under the federal security laws during the last three years, except if detailed below. [ ]

I declare under penalty of perjury, under the laws of the
United States, that the information entered is accurate:          **YES**

By clicking on the button below, I intend to sign and execute
this agreement and retain the Rosen Law Firm, P.A. to
proceed on Plaintiff's behalf, on a contingent fee basis.          **YES**

Signed pursuant to California Civil Code Section 1633.1, et seq. - and the Uniform Electronic
Transactions Act as adopted by the various states and territories of the United States.

Date of signing: 10/22/2014